REDINGTON (WINTERMUTE v.). See Case No. 17,896.

RED JACKET, The (KLOTS v.). See Case No. 7,871.

REDMAN (HARDY v.). See Case No. 6,061.

———

[1] [Reprinted by permission.]

## Case No. 11,631.

### REDMAN et. al. v. UNITED STATES.

[1 Hoff. Land Cas. 305.] [1]

District Court, D. California.    Dec. Term, 1857.

MEXICAN LAND GRANT—BONA FIDES OF GRANT—EVIDENCE.

The claim must be rejected, on the ground that the bona fides of the grant have not been sufficiently established by the evidence.

Claim [by J. W. Redman and others] for about ten acres of land in Santa Clara county [part of the orchard of Santa Clara], rejected by the board, and appealed by the claimants.

Thornton & Williams, for appellants.
P. Della Torre, U. S. Atty., for appellees.

OPINION OF THE COURT. The claimants have produced in evidence a grant purporting to have been made by Pio Pico, on the thirtieth of June, 1846, conveying the orchard of Santa Clara to Castañeda, Arenas and Dias, in consideration of $1200 paid by them to the government. Also, a memorandum or account, purporting to have been signed by Pico, of the articles furnished to the government by the Señores Castañeda, Arenas and Dias, in payment of the purchase money of the gardens of Santa Clara and San José. This receipt or account is dated Los Angeles, July 2d, 1846. The grant purports to be signed by Pio Pico, as governor, and by José Matias Moreno, as secretary. Appended to it is the usual certificate, signed by Moreno, stating that "a note of this superior decree has been taken in the corresponding book." No expediente from the archives has been produced, nor do those records contain any trace whatever of the execution of this grant. No corresponding book has been exhibited, nor is any such found among the archives. No possession of the land was taken by the grantees during the existence of the former government. It is stated by Jas. Alexander Forbes that the orchard remained in the possession of the missionary priests up to the year 1849 or 1850. About that time, one Osio obtained the possession, but by what right or title does not appear. The claim thus rests entirely on the alleged grant produced by the parties, with the usual proof of signatures, and on the parol testimony offered by them.

It is contended on the part of the United States that the grant was made subsequently to the conquest of the country, and is antedated. The grant, as we have seen, purports to have been made at Los Angeles, on the thirtieth of June, 1846. It was proved before the board that at that date Pio Pico was not at Los Angeles, but at Santa Barbara, with his secretary and suite. The claimants

———

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]

have taken, however, in this court, the deposition of Cayetano Arenas, who testifies that the grant was made in Santa Barbara, and sent by the governor to the witness at Los Angeles, where it was received by him July 4th, 1846; and it is suggested that the grant was dated at Los Angeles, the capital of the department, though actually signed at Santa Barbara, in accordance with the practice of the governor. The explanation is plausible, though it has somewhat the air of an after-thought to meet a difficulty that had unexpectedly arisen. It is strange, however, that the receipt above referred to should particularly set forth that "it was given, for the security of those interested, in the city of Los Angeles on the second of July, 1846," when in fact, if executed at all on that date, it must have been executed in Santa Barbara, or on the governor's own rancho. The grant, as has been stated, is to Juan Castañeda, Luis Arenas and Benito Dias. Castañeda is dead. The other two have been examined as witnesses. It is clearly proven, and indeed admitted by Cayetano Arenas, that the grant is in the handwriting of Castañeda. It is also in proof that during the whole month of June, and during the first days of July, 1846, Castañeda was at the headquarters of General Castro at Santa Clara. That about the tenth of July he was on the road to Los Angeles, at which place he arrived about the end of July. These facts are established by the testimony of General Castro himself, by that of Benito Dias, and of Cayetano and Luis Arenas. Dias states that he left Monterey for Los Angeles on the tenth or twelfth of July. That on his way down he met Castañeda with General Castro; that they proceeded together to Los Angeles, where they arrived about July 20th. That they saw Pio Pico on their journey, at his Rancho of San Marguerita. Cayetano Arenas, the claimants' witness, states that at the time he received the grant from Pio Pico, viz., July 4th, Castañeda, Benito Dias and Luis Arenas, the father of the witness, were not in Los Angeles, but were in the upper country; but that the latter arrived a few days afterwards. Luis Arenas testifies that he first saw the grant in the hands of Castañeda in his (Arenas') house, in Los Angeles; that he left San José for Los Angeles the day after he heard of the taking of Sonoma by the Americans. This event occurred in the middle of June. Supposing, then, the witness' memory to be accurate, he must have lingered on the road, if his son is to be believed, a considerable time, for Cayetano Arenas swears, as we have seen, that he received the grant in Los Angeles on the fourth of July, and his father did not arrive until some days afterwards. Luis Arenas further states that he "met Castañeda in Los Angeles a little while after his arrival." We have already seen, however, that Castañeda did not arrive in Los Angeles until about the twentieth of July. And Luis Arenas admits that when Castañeda showed him the grant,

Benito Dias and Governor Pico were in the place, and that he saw them every day.

Bearing these facts in mind, we proceed to consider the testimony of Dias with respect to the execution of the grant. This witness swears that the grant was executed in Los Angeles about the first of August; that he saw Castañeda write it, and that on the same day he brought it back to the house of Luis Arenas with the governor's signature attached to it; that the receipt for money and articles furnished was written a few days after, but that he (the witness) never paid anything on account of purchase. If this testimony be true, there is an end of the case. The fact that the grant is in the handwriting of Castañeda, would seem of itself such a corroboration of Dias' testimony as to exclude much doubt as to its truth. Arenas himself does not pretend to have heard of the grant, or the agreement for the sale of the orchard, until after Castañeda's arrival in Los Angeles; and this notwithstanding that, if the receipt be genuine, he, Castañeda, and Dias, had on the second of July, furnished to the governor cash and various supplies to the amount of $3200. He further states that he gave the governor two hundred head of cattle, that he received back three hundred dollars in change, and that he delivered to Pico a writing which showed that he made his part of the payment with the two hundred head of cattle, which were then on Pio Pico's rancho. He adds that Pio Pico has these same cattle to this day. Benito Dias states that he knows of the payment for the orchard of Santa Clara only from what Castañeda told him, viz., that he (Castañeda) had given a note to Pico, payable when the Mexican authority should be reestablished, but that he, Dias, never paid any part of it. The fact that the grant is in the handwriting of Castañeda might, perhaps, be accounted for, consistently with the good faith of the transaction, on the hypothesis, which however would be purely conjectural, that Castañeda had written it out and sent it to the governor. But in such case he must have written it before it was signed, and how can we explain the circumstance that the date (June 30th, 1846) is in the same handwriting and evidently written at the same time with the rest of the document? But supposing this difficulty surmounted, the receipt is evidently antedated, or a fabrication. Arenas could not have assigned the cattle spoken of by him, and the receipt for which is acknowledged on the second of July, at Los Angeles. He did not arrive until a few days before Castañeda; and his son, the only important witness for the claimants, states that he arrived some days after the fourth of July. Castañeda could not have paid the cash, or delivered the other articles mentioned in the receipt, on the second of July, for at that time he was at the headquarters of General Castro, at a distance of several hundred miles; and yet the receipt is in his handwriting.

The account given by Dias seems the only mode of reconciling these discrepancies, and, though I should hesitate to accept his unsupported statement, whether for or against a claimant in cases of this class, in this instance it is so corroborated and confirmed by other testimony, as to justify a belief in its truth. Cayetano Arenas is the only witness on the part of the claimants who pretends to have seen the grant before the end of July. If the claim is to be confirmed, it must be on his unsupported testimony. The account given by him bears strong marks of improbability. He states that the grant was sent to him, "as it related to his father's business," and that he was instructed to retain it until Castañeda came down from the upper country. His father arrived a few days after, but Castañeda did not arrive as we have seen, until about the twentieth. The father of the witness was one of the original grantees. It is strange that he should not only have withheld, for nearly two weeks, this grant from his father, who was as much entitled to receive it as Castañeda, but should not at least have shown it to him, or, so far as appears, mentioned its reception. That Luis Arenas saw it for the first time in Castañeda's hands is positively stated by himself. The deposition of Cayetano Arenas was taken after the rejection of the claim by the board. It is perhaps not unfair to say, that testimony of so much importance, and introduced for the first time after the claim was rejected, is liable to much suspicion. Luis Arenas was examined and cross-examined at length before the commissioners. The fact that Pio Pico was not in Los Angeles at the date of the grant had already been established. Had he known that the grant was in the possession of his son from the fourth of July until he delivered it to Castañeda, he would naturally have stated it. He does not allude to the circumstance. It is difficult to imagine that Cayetano Arenas could have received this grant, made for the benefit of his father, amongst others, and retained it in his possession for nearly two weeks, without ever mentioning the fact, either at the time or even subsequently, up to the moment when his father testified before the commission.

There are other circumstances which tend still further to corroborate the statements of Dias. The alleged motive of making this sale was the exigency of public affairs, which compelled the government to avail itself of all the resources at its disposal. It was dated within a few days of the capture of Monterey. The payment and support of the army must have been of the first necessity, and the use to which the money and other articles would most probably have been applied; yet Castro, the commanding general, states that he never received any money arising from the sale of the orchards for the expenses of the war, and that if money from that source had been so appropriated, he would certainly have known it. On his cross-examination he repeats that, though Pio Pico might have applied money or property arising from this sale to public uses without his (witness') knowledge, yet he could not have applied it to the use of the army. But Luis Arenas negatives the idea that the cattle at least were applied to public uses, for he states (perhaps unguardedly) that the two hundred head given by him to Pico are still on Pico's rancho. This fact alone would be sufficient to raise a suspicion that the governor did not, in a crisis of public affairs, in good faith, attempt to obtain supplies by a sale of public domain; but rather that he has been induced at a subsequent day, for his individual advantage, to sign an antedated title. But even if there were less force in all these circumstances, one consideration seems to me decisive. Neither Pio Pico nor Moreno have been examined in the case. The governor, in the absence of all evidence from the archives, was the person who of all others could have explained when and why he made the grant; why it was dated at Los Angeles; from whom he received it for signature; to whom he sent it; to what uses he aplied the property, and how it happened that he signed a receipt for it at Los Angeles, on the second of July, as received from Castañeda, Arenas and Dias, when no one of them was at that place. Moreno might have explained how it happened that the grant was in this case written by Castañeda, when the latter was at its date, and for some weeks subsequently, at a distance of several hundred miles. If the grant was written by Castañeda and transmitted to the governor for signature, Moreno might perhaps have told us how it happened that Castañeda guessed so prophetically the day on which the governor would sign it, and was able by anticipation to fill in the date at the time he drew the instrument. For that the date was written at the same time and in the same hand with the rest of the document is obvious on inspection.

In a case like this, surrounded by circumstances so suspicious, and depending, on the part of the claimants, upon the testimony of Cayetano Arenas alone, the depositions of the governor and his secretary ought not to have been withheld. If the decision of this cause depended upon weighing the unsupported testimony of Arenas against testimony equally unsupported of Dias, the duty of determining which had sworn falsely would be difficult as well as painful. But the testimony of Dias is corroborated by every fact in the case, while that of Arenas, if not inconsistent with them, is wholly unsupported, and explanation from the best if not the only source from which it could be furnished, is withheld. I think it clearly my duty to reject the claim.

Having reached this conclusion, it is unnecessary to discuss the question whether the governor had authority to sell the lands of the missions, or at least the orchards, vineyards and cultivated portions, which, under

the decree of the supreme government and the proclamation of Micheltorena, had been restored to the missionary priests.

After the above opinion was read, it was suggested to the court, by the counsel for the claimants, that the deposition of José Matias Moreno, which was on file in the case of Larkin v. U. S. [Case No. 8,091], had been by consent, admitted as evidence in this. The claim in the case of Larkin v. U. S. is founded on the same grant as that exhibited in this case, and is for a part of the orchard.

In the opinion delivered in that case, the testimony of Moreno is adverted to, as follows:

"Moreno testifies that the signatures of himself and Pico are genuine, and affixed at the time the documents bear date, and that Pico signed them in his presence. He also swears that the documents are in the handwriting of Castañeda, that he saw him write them, and that they were written under his (witness') directions, as he was much occupied with official duties. It is enough to say with respect to this statement, that it is abundantly proved by the testimony of General Castro, Benito Dias, Luis Arenas and Cayetano Arenas, that Castañeda could not have been at Santa Barbara on either the thirtieth of June or second of July, the days on which the documents are dated. The statement of Cayetano Arenas, the chief witness for the claimants, is wholly incompatible with the idea that Castañeda could have been at Santa Barbara, and written the grant by Moreno's directions. Arenas states that the governor sent the grant to him, 'with instructions to retain it until Castañeda came from the upper country.' It cannot surely be pretended that at that time Castañeda was with the governor, writing out the grant and receipt, and delivering the articles mentioned in the latter."

The testimony of Moreno, therefore, entirely fails to afford that satisfactory explanation of the circumstances which the court is entitled to expect. It has only served to confirm me in the opinion already expressed as to the merits of the claim.